UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ARTHUR JACKSON,

                    Plaintiff,                      Case No. 2:20-cv-246

v.                                                  Honorable Robert J. Jonker

CATHERINE BAUMAN et al.,

                    Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the

Court is required to dismiss any prisoner action brought under federal law if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C.

§ 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*,

404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against

Defendants Bauman, Washington, Unknown Parties #1, Farley, Bergman, and Styes.  The Court

will also dismiss, for failure to state a claim, his due process claims against the remaining

Defendants.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Newberry Correctional Facility (NCF) in Newberry, Luce County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues Warden Catherine Bauman, MDOC Director Heidi Washington, Unknown Parties #1 (named as John/Jane Does, Health Unit Manager), Prison Employee Unknown Kenyon, Resident Unit Manager Unknown Farley, Prison Counselor K. Bergman, Corrections Officer Unknown Smutex, Unknown Perkins, Unknown Mitchell, and Food Supervisor J. Styes.

Plaintiff alleges that he arrived at NCF at the end of 2019 with stomach inflammation, pain, and internal bleeding.  Plaintiff claims that his symptoms are the result of H. Pylori, which can lead to colon and stomach cancer.  Plaintiff believes that he contracted H. Pylori from prison food that had been contaminated by flies.  Plaintiff kited health care seeking medical care for bleeding from his penis and rectum.  Dr. Juan Perez found blood in his urine and rectum and recommended further tests.  Dr. Perez' request was denied by the MDOC and he appealed, to no avail.  A couple of months later, the COVID-19 pandemic began.  Plaintiff claims that over ten inmates in his cube were suffering from symptoms of COVID-19 in March of 2020 but were not tested.  During this time, Plaintiff worked as a shower porter on second shift at NCF.  Second shift porters clean the showers between 11:30 pm and 3:00 am.  Beginning in March of 2020, Plaintiff was provided with a mask and gloves to wear while cleaning.  In addition, Plaintiff was provided with bleach by prison employee Defendant Perkins.

Plaintiff alleges that he resided on 11 unit and that this unit was designated as the unit for inmates who were being tested for COVID-19.  Plaintiff states that COVID-19 positive

prisoners were directed to shower from 11:30 pm to 11:50 pm, and that the shower was closed to general 11 unit prisoners at 11:30 pm.

Plaintiff claims that on April 23, 2020, another shower porter inmate A. Moore, who was white, told Plaintiff that first shift Officer Perkins instructed him to wait for one hour after the showers had been used by COVID-19 positive prisoners to clean them.  However, Plaintiff was ordered by Defendants Smutex, Perkins, and Mitchell to clean the showers immediately after they had been used by COVID-19 positive prisoners.  When Plaintiff filed a grievance, he was fired from his job and moved out of 11 unit, which was the only unit that had socially distanced bunks and provided microwaves for every cube.  In addition, Plaintiff states that the dayroom in 11 unit was the size of a ten-car garage, with a separate microwave room.

Plaintiff states that he was placed in 10 unit, where there was no room for social distancing.  Plaintiff complains that 10 unit contains sixteen bunks in an area the size of a three-car garage, and that bunks are only five feet apart.  Plaintiff states that the showers have a small piece of plexiglass between them but that it does not prevent water from splashing into the neighboring shower.  Plaintiff states that there is only one dayroom in 10 unit, which is the size of a one-car garage.  The dayroom contains a television and a microwave.

Plaintiff alleges that Defendants Bauman and Washington allowed a prison employee on 2 unit to infect multiple prisoners, who then interacted with the general population for two days before being quarantined.  Then after isolating the prison population for over six weeks and completely clearing all the positive COVID-19 cases, Defendants Washington and Bauman allowed over two hundred COVID-19 positive prisoners to be transferred from Marquette Branch Prison to NCF.  Plaintiff states that NCF is now a COVID-19 outbreak facility and that he is being held in the same unit as COVID-19 infected prisoners.  Plaintiff alleges that Defendant

Unknown Parties #1 (HUM John/Jane Does) are not following their own operational procedure and policy directive 03.04.110, which mandates that once a prisoner is positive for a communicable disease, they are to be transferred to a designated facility. Plaintiff states that during times when he cannot wear a mask, such as while eating or showering, he is at high risk because of the lack of social distancing.  Plaintiff states that on two occasions in October 2020, Defendant Kenyon sent him to health service despite the fact that health service had not called Plaintiff out to be seen.  The second time that Plaintiff was sent to health service, he came into contact with COVID-19 positive prisoners from Unit 2.  Plaintiff believes that this exposure was deliberate.  Although Plaintiff does not specifically allege that he contracted COVID-19, he attaches the copy of a test result which shows that he tested positive for COVID-19 in early December 2020.  (ECF No. 1-11, PageID.46.)

Plaintiff further asserts that he is being falsely imprisoned because the January 12, 1999, judgment used to imprison him was not signed, and that the second judgment, which was signed, was improperly back-dated to January 12, 1999.  Plaintiff claims that because of these errors, there is no authority for his imprisonment.

Plaintiff states that Defendants have retaliated against him and interfered with his legal mail in violation of the First Amendment, have subjected him to cruel and unusual punishment in violation of the Eighth Amendment, and have violated his Fourteenth Amendment equal protection and due process rights.  Plaintiff also claims that he is being illegally imprisoned by Defendants Washington and Bauman.  Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While

4

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.    False imprisonment

Plaintiff alleges in his complaint that his imprisonment is unauthorized because the original judgment used to imprison him was not signed, and the second judgment, which was signed, was improperly back-dated to January 12, 1999.  Plaintiff suggests that he should be released from the jail.  A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983.  *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding that, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus").  Therefore, Plaintiff's false imprisonment claim must be dismissed.

## IV.    Due process

Plaintiff makes a conclusory assertion that Defendants violated his Fourteenth Amendment due process right.  The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim."  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff appears to be claiming that his transfer from 11 unit to 10 unit, where living conditions were not as comfortable and where inmates were more crowded, violated his due process rights.  The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set

6

forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).  The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship.  *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005).

The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification.  *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29.  Prisoners cannot "have a protected liberty interest in the procedure[s] affecting [their] classification and security, because the resulting restraint, without more, [does] not impose and 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1 (6th Cir. Dec. 23, 1997); *see also Morris v. Metrish*, No. 97-1624, 1998 WL 246454, at *2 (6th Cir. May 5, 1998); *Moore v. Sally*, No. 97-4384, 1999 WL 96725, at *1 (6th Cir. Feb. 3, 1999).  Without such a protectible interest, Plaintiff cannot successfully claim he has been denied due process, because "process is not an end in itself."  *Olim*, 461 U.S. at 250.

Moreover, a prisoner has no constitutional right to prison employment or a particular prison job.  *See Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir. 1989).  Further, as the

Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates. *See Williams v. Meese,* 926 F.2d 994, 997 (10th Cir. 1991); *James v. Quinlan,* 866 F.2d 627, 629–30 (3d Cir. 1989). Therefore, Plaintiff's assertion that he was improperly fired from his job assignment does not support a Fourteenth Amendment due process claim.

The Court further notes that to the extent that Plaintiff is attempting to assert a substantive due process claim, such a claim fails. "Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there are specific constitutional amendments that apply to Plaintiff's claims. For example, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his medical and safety claims. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) (rejecting a substantive due process claim where the Eighth Amendment supplies a textual source for prison-condition claims); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's

substantive due process claim was subject to dismissal).  Similarly, the First Amendment provides

an explicit textual source of constitutional protection for Plaintiff's retaliation claims.  Thus, the

standard applicable to that source, the First Amendment right to be free from retaliation, and not

the more generalized notion of substantive due process should be applied.  *Graham*, 490 U.S. at

395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the

First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing*

*Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (holding that a "substantive due process right to

free speech is duplicative of [a] First Amendment retaliation claim.").  Consequently, Plaintiff's

substantive due process claim will be dismissed.

## V.      Eighth Amendment

Plaintiff claims that Defendants Bauman, Washington, Unknown Parties #1,

Kenyon, Smutex, Perkins, and Mitchell violated his rights under the Eighth Amendment when

they either failed to protect him from COVID-19 positive prisoners, or deliberately exposed him

to such prisoners.  The Eighth Amendment imposes a constitutional limitation on the power of the

states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it

contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337,

345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the

"unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)

(per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial

of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson*

*v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with

"deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for

prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every

9

unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

With regard to Defendants Unknown Parties #1, Kenyon, Smutex, Perkins, and Mitchell, Plaintiff states that he was ordered to clean the showers immediately after they were used by COVID-19 positive inmates in violation of normal procedure, as it was told to a white inmate. When Plaintiff complained, he was moved to 10 unit, where he was unable to adequately social distance. Plaintiff claims that the conditions in 10 unit violate the MDOC policy for addressing

the pandemic.  In addition, Plaintiff claims that he was deliberately sent to health services during a time when COVID-19 positive prisoners were being treated so that he would be exposed. Plaintiff subsequently contracted COVID-19.  The Court concludes that Plaintiff has alleged sufficient facts to support an Eighth Amendment claim against Defendants Kenyon, Smutex, Perkins, and Mitchell.

However, Plaintiff has not alleged that Defendant Unknown Parties #1 had any involvement in Plaintiff being sent to health services while COVID-19 positive prisoners were there.  Therefore, it does not appear as if Defendant Unknown Parties #1 knew of and disregarded an excessive risk to Plaintiff's health or safety.  Consequently, Defendant Unknown Parties #1 is properly dismissed.

Plaintiff alleges that Defendants Bauman and Washington allowed a prison employee on 2 unit to infect multiple prisoners, who then interacted with the general population for two days before being quarantined.  Then, after isolating the prison population for over six weeks and completely clearing all the positive COVID-19 cases, Defendants Washington and Bauman allowed over two-hundred COVID-19 positive prisoners to be transferred from Marquette Branch Prison to NCF.

Plaintiff fails to allege facts indicating that Defendants Bauman and Washington actually knew that there was an infected employee working on 2 unit.  Nor does Plaintiff allege facts showing that the prisoners who were transferred in to NCF were placed in the general population, or in proximity to uninfected prisoners.  The mere fact that COVID-19 positive prisoners were being housed at NCF is insufficient to show that Defendants Bauman and Washington were deliberately indifferent to a serious risk of injury to Plaintiff.  Moreover, to the extent that Plaintiff alleges that the transfer violated prison policy, his allegations do not support

11

an Eighth Amendment claim.  The failure to comply with an administrative rule or policy does not

itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2

(6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954

F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992);

*McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to

follow policy directive does not rise to the level of a constitutional violation because policy

directive does not create a protectible liberty interest).  Section 1983 is addressed to remedying

violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982);

*Laney*, 501 F.3d at 580–81.  Therefore, Plaintiff's Eighth Amendment claims against Defendants

Bauman and Washington are properly dismissed.

Plaintiff also claims that his Eighth Amendment rights were violated when

"Lansing's Health Overseerer" refused to approve the treatment recommended by Dr. Perez

(ECF No. 1, PageID.21).  However, Plaintiff does not name "Lansing's Health Overseerer" as a

Defendant in this case.  Because Plaintiff fails to allege that any of the named Defendants in this

case specifically refused to provide him with necessary medical care, this claim is properly

dismissed.

Plaintiff alleges that Defendant Styes violated his Eighth Amendment rights when

he failed to prevent flies from getting on Plaintiff's food.  Plaintiff states that although Defendant

Styes told him that COVID-19 is not transmitted by flies, he was unable to cite any evidence in

support of that claim.  The Court notes that Plaintiff's allegations against Defendant Styes support,

at most, a claim of negligence.  Allegations of negligence fall short of the deliberate indifference

required to state an Eighth Amendment claim.  *See Farmer*, 511 U.S. at 835 (holding that an Eighth

12

Amendment violation requires a "state of mind more blameworthy than negligence").  Therefore,

Defendant Styes is properly dismissed from this action.

## VI.    Interference with mail

Plaintiff makes a conclusory assertion that Defendant Bergman interfered with his

mail.  However, Plaintiff fails to make any specific factual allegations in support of this claim.

Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state

a claim under § 1983.  *See Iqbal*, 556 U.S. 662, 678–79; *Twombly*, 550 U.S. at 555.  Therefore,

Plaintiff's interference-with-mail claim is properly dismissed.

## VII.    Retaliation

Plaintiff claims that Defendants Smutex, Perkins, and Mitchell retaliated against

him for filing a grievance about being forced to clean the showers immediately after they were

used by COVID-19 positive prisoners causing him to lose his job and be transferred to a less

desirable unit where it was not possible to socially distance.  Retaliation based upon a prisoner's

exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*,

175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation

claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse

action was taken against him that would deter a person of ordinary firmness from engaging in that

conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*

Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial

or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250

F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429

U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct

for which a prisoner cannot be subjected to retaliation.  *See Smith v. Campbell*, 250 F.3d 1032,

1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  The Court concludes that Plaintiff's conduct in filing a grievance regarding having to clean the showers immediately after they were used by COVID-19 prisoners constitutes protected conduct.

The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).  Even seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action.  *Maben v. Thelen*, 887 F.3d 252, 266–67 (6th Cir. 2018) (quoting *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse")).  The *Maben* court noted the contrary holding in *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (citing *Thaddeus-X*, 175 F.3d at 396–97) (14 days' loss of privileges does not constitute an adverse action), and, because *Maben* was a published opinion, it effectively overruled *Ingram*.  Plaintiff claims that he lost his job and was transferred to a unit that was a lot more crowded, with no ability to social distance, and had far fewer amenities.  The Court concludes that the facts as alleged by Plaintiff are capable of deterring a person of ordinary firmness from engaging in protected conduct.

Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'"  *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).  Plaintiff claims that Defendants Smutex, Perkins, and Mitchell had him fired from his job and moved out of 11 unit after he filed a grievance complaining about being required to clean the

14

showers immediately after they were used by COVID-19 positive prisoners, when the white prisoner shower porter was instructed to wait an hour after such usage.  The Court concludes that Plaintiff's allegations are sufficient to support a retaliation claim against Defendants Smutex, Perkins, and Mitchell.

## VIII.   Equal protection

Plaintiff, who is black, claims that Defendants Smutex, Perkins, and Mitchell refused to allow him the same safety precaution of waiting an hour to clean the showers after usage by COVID-19 positive prisoners as they allowed a white prisoner.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest."  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985).  On initial review, Plaintiff has alleged sufficient facts to support an equal protection claim against Defendants Smutex, Perkins, and Mitchell.

## IX.   Respondeat superior

Plaintiff alleges that Defendants Washington, Bauman, Farley, and Bergman allowed subordinates to engage in illegal acts against Plaintiff, including theft of grievances, legal mail, and complaints, obstruction of mail, deliberate indifference to Plaintiff's medical needs and unsafe living conditions, discrimination, retaliation, and violations of due process.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory

of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  To the extent that Plaintiff alleges that Defendants Washington, Bauman, Farley, and Bergman are responsible for the conduct of their subordinates, he fails to state a claim against them.

## X.      Pending motion to amend

Plaintiff has filed a motion to amend his complaint (ECF No. 5).  However, Plaintiff has not included a proposed amended complaint, nor has Plaintiff specified the allegations and/or claims that he is seeking to assert in an amended complaint. Federal Rule of Civil Procedure 15 provides that a party may amend its pleadings by leave of court and that "leave [to amend] shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave to amend:  "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Id* at 182.

The Court noted that the grant or denial of the opportunity to amend was discretionary with the district court and that the district court should provide a justifying reason for its decision.  *Id.*

In this instance, evaluation of the factors identified in *Foman* is difficult as plaintiff has failed to attach a copy of his proposed amended complaint.  To grant leave to amend without reviewing the proposed amendment would be inappropriate.  *See, e.g., Beydoun v. Sessions*, 871 F.3d 459, 469–70 (6th Cir. 2017) (recognizing that, without Plaintiff's proposed amendment, a court cannot determine whether "justice so requires" leave to amend); *Wolgin v. Simon*, 722 F.2d 389, 394–95 (8th Cir. 1983); *Nation v. United States Gov't*, 512 F. Supp. 121, 124–25 (S.D. Ohio 1981); *Williams v. Wilkerson*, 90 F.R.D. 168 (E.D. Va. 1981).

Plaintiff also claims that he no longer has a copy of his original complaint and seeks to have the Court provide him with a copy of his original complaint and all of the exhibits so that he can determine what is necessary to include in an amended complaint.  Plaintiff is not entitled to a free copy of the pleadings.  Should Plaintiff wish to purchase a copy of his complaint and included exhibits, he should contact the Clerk's Office for a determination of the cost and instructions regarding payment.  Plaintiff's motion (ECF No. 5) is **DENIED**.

<u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Bauman, Washington, Unknown Parties #1, Farley, Bergman, and Styes will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, his due process claims against the remaining Defendants.  Plaintiff's Eighth Amendment claims against Defendants Kenyon, Smutex, Perkins, and Mitchell, and his retaliation and equal protection claims against Defendants Smutex, Perkins, and Mitchell remain in the case.

17

An order consistent with this opinion will be entered.


Dated:   <u>March 3, 2021</u>          <u>/s/ Robert J. Jonker</u>
                                    ROBERT J. JONKER
                                    CHIEF UNITED STATES DISTRICT JUDGE