UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ARTHUR JACKSON, #171107,

        Plaintiff,

v.

LUKE KENYON, et al.,

        Defendants.

_____/

Case No. 2:20-cv-246

Hon. Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 34.)

Plaintiff — state prisoner Arthur Jackson — filed suit under 42 U.S.C. § 1983 on December 11, 2020. In his verified complaint, Jackson alleged that the Director of the Michigan Department of Corrections (MDOC) and employees of the Newberry Correctional Facility (NCF) in Newberry, Michigan, failed to adequately protect him from COVID-19 infection, deliberately exposed him to COVID-19, falsely imprisoned him, retaliated against him, and violated his due process and equal protection rights. (ECF No. 1.)

On March 3, 2021, this Court issued an Opinion (ECF No. 8) and Order (ECF No. 9) dismissing all but Jackson's failure to protect, retaliation, and equal protection

claims against Defendant Corrections Officers (COs) Smutek,[1] Perkins, and Mitchell, and Jackson's claim against CO Kenyon for deliberately exposing him to COVID-19.

The Defendant COs now move for partial summary judgment, asserting that Jackson did not properly exhaust his administrative remedies with respect to some of his remaining claims. (ECF No. 34.) Specifically, Defendants argue that Jackson failed to exhaust his retaliation claims against COs Smutek, Perkins, and Mitchell, as well as his deliberate exposure claim against CO Kenyon. (*Id.*, PageID.250-251.) According to Defendants, the grievance that Jackson filed regarding his alleged retaliatory transfer did not name COs Smutek, Perkins, or Mitchell and was rejected, and Jackson did not pursue any grievances involving CO Kenyon through Step III of the grievance process. (*Id.*)

The undersigned respectfully recommends that the Court grant Defendants' motion for partial summary judgment and dismiss Jackson's retaliation claims against COs Smutek, Perkins, and Mitchell as well as his claim against CO Kenyon for deliberately exposing Jackson to COVID-19; Jackson did not properly pursue these claims through all three steps of the grievance process.

## II.    Factual Allegations

Jackson arrived at NCF in late 2019. (ECF No. 1, PageID.8.) He says that in March of 2020, NCF had its first case of COVID-19. (*Id.*, PageID.9.) That case was in his housing unit at the time, Unit 11. (*Id.*) In fact, the individual who had been

---

[1]    CO Smutek was named as "Defendant Smutex" in the complaint. (ECF No. 1, PageID.7.)

diagnosed slept in the same cube as Jackson. (*Id.*) Later, more than ten inmates in Jackson's cube began suffering from symptoms of COVID-19 but were not tested. (*Id.*) During this time, Jackson worked as a shower porter on second shift at NCF. Part of his assignment was to clean the Unit 11 showers. (*Id.*)

According to Jackson, second shift porters clean the showers between 11:30 p.m. and 3:00 a.m. (*Id.*, PageID.10.) Jackson says that when CO Perkins hired him to be a porter, Perkins provided him with bleach and gloves. (*Id.*, PageID.9.) After NCF began using Unit 11 to house prisoners who were tested for COVID-19, prisoners who tested positive were directed to shower between 11:30 p.m. and 11:50 p.m. (*Id.*, PageID.10.) Jackson says that he was given a mask to wear while cleaning the showers, but he was never told to wait for an hour after the showers were used by the prisoners with COVID-19 before cleaning them. (*Id.*) In fact, Jackson says that on April 4, 2020, CO Smutek told him to clean the showers immediately after prisoners who had COVID-19 used them. (*Id.*)

But Jackson claims that on April 23, 2020, another shower porter, A. Moore, told Jackson that COs Perkins and Mitchell had instructed him to wait for an hour before cleaning the showers when they were used by prisoners with COVID-19.[2] (*Id.*, PageID.10-11.) Because Perkins had instructed Moore, who is White, to wait to clean

---

[2] Jackson provided the Court with a declaration from Moore, confirming that on April 23, 2020, he was informed by COs Perkins and Mitchell to wait one hour before cleaning the showers after they were used by inmates with COVID-19. (ECF No. 1-1, PageID.33.) However, the undersigned notes that Jackson's grievance on this matter was filed on April 8, 2020, so it appears that Moore and Jackson are mistaken as to this date. (ECF No. 35-4, PageID.399.)

3

the showers, but none of the COs had instructed Jackson, who is Black, to take such precaution, Jackson filed grievance NCF-20-04-0156-2F against the COs for failing to protect him from COVID-19 exposure and discriminating against him based on race. (*Id.*, PageID.11.) Jackson says that he was terminated from his position and transferred to a different housing unit, Unit 10, in retaliation for filing this grievance and other grievances. (*Id.*, PageID.15.)

According to Jackson, Unit 10 does not have sufficient room for social distancing. (*Id.*) He complains that the Unit contains sixteen bunks in a room the size of a three-car garage, and that the bunks are only five feet apart. (*Id.*, PageID.4, 15.) Jackson states that the showers are only one foot apart, and that they do not have curtains. (*Id.*, PageID.15.) Instead, the showers are separated by a piece of small plexiglass, which does not prevent water from splashing from one shower to another. (*Id.*, PageID.4.) And the only dayroom in Unit 10 is approximately the size of a one-car garage. (*Id.*) Jackson says that the dayroom typically contains about twenty prisoners, packed in "like sardines in a can." (*Id.*, PageID.15.) It also contains the Unit's microwave and television. (*Id.*) In contrast, every cube in Unit 11 contains a microwave, and two less bunks than normal to allow for social distancing. (*Id.*) Jackson says that he filed various grievances after his transfer complaining about the overcrowding in Unit 10, but that some of his grievances were stolen. (*Id.*, PageID.16.)

Jackson further alleges that on two occasions in October 2020, CO Kenyon sent him to health services despite the fact that health services had not called Jackson out

to be seen. (*Id.*, PageID.21.) The second time that Kenyon sent Jackson to health services, he came into contact with prisoners from Unit 2 who had been diagnosed with COVID-19. (*Id.*) Jackson believes that this exposure was deliberate. (*Id.*) Although Jackson does not specifically allege that he contracted COVID-19, he provided the copy of a test result which shows that he tested positive for COVID-19 in early December 2020. (ECF No. 1-11, PageID.46.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and

---

[3] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, a non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### IV.    Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement

7

"afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where,

why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhaustion those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and

9

therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

---

[4] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596.

V.   Analysis

Defendants concede that Jackson properly exhausted his failure to protect and equal protection claims against COs Smutek, Perkins, and Mitchell. (ECF No. 35, PageID.250.) However, Defendants assert that Jackson did not properly exhaust his retaliation claims against COs Smutek, Perkins, and Mitchell, or his claim against CO Kenyon for deliberately exposing him to COVID-19, and that this Court should therefore dismiss those claims. (*Id.*, PageID.250-251.)

The relevant grievances are summarized below.[5]

| Grievance No. with ECF No. and PageID. | Person(s) Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| NCF-20-04-156-2F (*Id.*, PageID.396-400.) | COs Smutek, Perkins, Mitchell, and PC Johnson | Moore, a White shower porter, was told to wait one hour before cleaning showers used by inmates with COVID-19. Jackson, who is Black, was given no such instruction. | April 4, 2020 | Denied. | Denied. | Denied. |
| NCF-20-04-182-28C (ECF No. 35-4, PageID.386-390.) | Warden Catherine Bauman | The Unit 10 beds were not sufficiently spread out, and Jackson was transferred to a new unit despite the pandemic. | April 22, 2020 | Rejected as containing multiple unrelated issues. | Rejection upheld. | Rejection upheld. |

---

For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

[5]   Not included in this table is grievance NCF-20-06-232-28B, which Jackson seemed to identify in his complaint as pertaining to his retaliation claims. (ECF No. 1, PageID.14.) Review of that grievance shows that it is not in fact relevant, as it names non-party NCF employees and complains of unrelated racial discrimination, property theft, and false imprisonment. (ECF No. 35-4, PageID.380.) Even if that grievance had pertained to the remaining claims, it was rejected as vague at all three steps. (*Id.*, PageID.377-380.)

11

| Grievance No. with ECF No. and PageID. | Person(s) Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| NCF-20-04-183-28B (*Id.*, PageID.391-395.) | Prison Counselor (PC) Johnson, Warden Catherine Bauman "and others" | Jackson was transferred from Unit 10 to Unit 11 in retaliation for engaging in protected conduct. | April 22, 2020 | Rejected as vague. | Rejection upheld. | Rejection upheld. |

As indicated by Defendants, the only relevant grievance denied at all three steps of the grievance process prior to Jackson filing his complaint was NCF-20-04-156-2F. (ECF No. 35-4, PageID.396-400.) That grievance complained that COs Smutek, Perkins, and Mitchell, as well as a non-party NCF employee, had discriminated against Jackson and failed to protect him from COVID-19 exposure by telling him to clean the showers immediately after use by prisoners diagnosed with COVID-19 but telling a White porter to wait an hour before doing the same. (*Id.*)

Only one grievance complained of a retaliatory transfer between housing units. That grievance, NCF-20-04-183-28B, is shown below.

**MICHIGAN DEPARTMENT OF CORRECTIONS**
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247 13/94
CSJ-247A

Date Received at Step I: 4/27/20    Grievance Identifier: WCF 20 04 001 1830 28 13

Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Arthur Jackson -El | #171107 | NCF | 10-24-B | 4-22-20 | 4-24-20 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? 4-22-20 & 4-23-20.
If none, explain why. I first talked wit P.C. Gary Johnson and the next day Warden, C. Bauman in which, I was, spent per finagle, without the truth, revealed. Matter not resolved to justify the retaliation/reprisal action!

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. (P.C. Johnson, C. Bauman) and others.

ISSUE: A clear violation of the Grievance Policy at PD-03.02.130 (k) at the appearance of (reprisal) action, prohibited. This occurred because I'm engaged in protected conduct via, U.S.C.A. 1st Am. Const. per (redress of grievances) & (Habeas Corpus) in which, I've been transferred from the Honor Unit "1" back into #18 unit. This retaliatory transfer has subjected me to "emotional distress", as well as, An "injurious position". I've lost created liberty interest via, Substantive rights lost unconstitutionally per adverse reaction, due to causual connections, experienced. Grant an interview; Declaratory Judgment; Injunction to prevent continual retaliations; Compensatory Damages for $300,000; Punitive Damages for $700,000. Jury Trial; Discovery; Interrogation; Court Costs, Mail and Copies/Attorney fees, sought!!

RESPONSE (Grievant Interviewed?)  ☐ Yes  ☒ No    If No, give explanation. If resolved, explain resolution.

SEE ATTACHED

Respondent's Signature / Date 5/1/20 / Working Title CRR-70
Respondent's Name (Print): Marshall
Reviewer's Signature / Date 4-28-2020 / Working Title AW
Reviewer's Name (Print): Huffer

Date Returned to Grievant: 5/1/20    If resolved at Step I, Grievant sign here. Resolution must be described above.

(*Id.*, PageID.394.)

13

Not only was NCF-20-04-183-28B rejected as vague at all steps (*id.*, PageID.391-395) but the grievance did not name any Defendant.[6]

The only remaining grievance touching on the allegations in the complaint is NCF-20-04-182-28C. That grievance complained about the conditions of Unit 10, and that Jackson was transferred between housing units during the pandemic. (*Id.*, PageID.389.) However, it did not complain of retaliation, or otherwise name Defendants. (*Id.*) That grievance was also rejected at all three steps of the process. (*Id.*, PageID.386-390.) Because these grievances did not adhere to MDOC policy, they do not serve to exhaust Jackson's retaliation claim. *Jones*, 549 U.S. at 218-19.

Finally, Jackson's Step III grievance report and the associated grievances reflect that he did not pursue any grievances against CO Kenyon through all three steps of the grievance process. (ECF No. 35-4, PageID.265-409.)

The undersigned acknowledges that in a few places in his compliant, Jackson made vague allegations that grievances were missing, were still pending, or were stolen. (ECF No. 1, PageID.14, 16.) But Jackson did not specify what those grievances pertained to, nor his grounds for asserting that they were missing or stolen. And to the extent that additional grievances were pending at the time he filed his complaint, those grievances cannot serve to exhaust Jackson's claims. *Roberts v. Lamanna*, 45 F. App'x 515, 516 (6th Cir. 2002) (explaining that a plaintiff cannot exhaust administrative remedies "during the pendency of the action"). Had

---

[6]   MDOC Policy requires inmates to include the names of all those involved in their grievances, and specifically provides that grievances may be rejected if they are vague. MDOC Policy Directive 03.02.130 ¶¶ R, G.

Jackson responded to Defendants' motion for summary judgment, perhaps he could have clarified the contents of the missing or stolen grievances and his grounds for believing that they were stolen in a manner sufficient to raise a genuine issue of fact as to whether his exhaustion efforts were thwarted.  But, in the opinion of the undersigned, the vague allegations in Jackson's complaint are insufficient to create such an issue.

## VI.     Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motion for partial summary judgment and dismiss Jackson's retaliation claims against COs Smutek, Perkins, and Mitchell as well as Jackson's claim against CO Kenyon for deliberately exposing him to COVID-19.

If the Court accepts this recommendation, Jackson's failure to protect and equal protection claims against COs Smutek, Perkins, and Mitchell will remain.


Dated:   May 23, 2022                              /s/ *Maarten Vermaat*
                                                   MAARTEN VERMAAT
                                                   U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn,* 474 U.S. 140 (1985).