UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ARTHUR JACKSON #171107,

    Plaintiff,

v.

UNKNOWN SMUTEX, et al.,

    Defendants.
_____/

Case No.  2:20-cv-246

Hon.  Jane M. Beckering
U.S. District Judge

### REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment.  (ECF No. 84.)

Plaintiff in this case — state prisoner Arthur Jackson — filed suit pursuant to 42 U.S.C. § 1983 on December 11, 2020.  In his verified complaint, Jackson alleged that that while he was working as a porter at the Newberry Correctional Facility (NCF) in Newberry, Michigan, NCF employees and Michigan Department of Corrections (MDOC) staff[1] illegally imprisoned him and violated his First, Eighth, and Fourteenth Amendment rights.  (ECF No. 1, PageID.3-4, 8-26.)   At this stage of

---

[1]    Including: (1) Warden Catherine Bauman, (2) MDOC Director Heidi Washington, (3) an unknown health unit manager, (4) Corrections Officer (CO) Unknown Kenyon, (5) Resident Unit Manager (RUM) Unknown Farley, (6) Prison Counselor (PC) K. Bergman, (7) CO Unknown Smutek (named "Smutex"), (8) CO Unknown Perkins, (9) CO Unknown Mitchell, and (10) Food Supervisor J. Styes. (ECF No. 1, PageID.2, 6-8.)

1

the case, only Jackson's Eighth Amendment deliberate indifference and Fourteenth Amendment equal protection claims against COs Smutek, Perkins, and Mitchell for instructing him to clean the showers in his housing unit immediately after they were used by COVID-19 positive prisoners but instructing a white prisoner to wait an hour before cleaning the showers remain. (*See* ECF No. 8, PageID.158 (Screening Op.); ECF No. 64, PageID.539 (Op. & Order Adopting R. & R.).)

Defendants now move for summary judgment. (ECF No. 84.) Defendants argue that they were not deliberately indifferent to a serious risk of harm; they acted reasonably in response to the COVID-19 pandemic. (ECF No. 85, PageID.626-636.) Furthermore, Defendants contend Jackson offers at most conclusory allegations of racial discrimination. (*Id.*, PageID.636-640.) Finally, Defendants aver that they are entitled to qualified immunity in their personal capacities. (*Id.*)

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment. In the undersigned's opinion, there are no genuine issues of material fact remaining in this case and Defendants have established that they acted reasonably in response to the risks posed by the COVID-19 pandemic. Furthermore, even assuming that Defendants gave Jackson different cleaning instructions than they gave to a porter of a different race, nothing on the record suggests that Defendants acted with discriminatory intent. Instead, it appears that different COs gave different instructions to their subordinates, and that is not a constitutional violation.

## II.     Relevant Factual Allegations

Jackson says that he arrived at NCF in late 2019. (ECF No. 1, PageID.8.) At the time, Jackson says that he was dealing with medical conditions including stomach inflammation and internal bleeding. In March 2020, a few months after Jackson's arrival, Jackson says that NCF had its first prisoner test positive for COVID-19. (*Id.*, PageID.9.) The prisoner who tested positive for COVID-19 lived in Jackson's cube in Housing Unit 11. (*Id.*) After living in close quarters with the COVID-19-positive prisoner, other members of Jackson's cube began suffering from symptoms of COVID-19. (*Id.*) However, Jackson says the prisoners exhibiting symptoms were not tested for COVID-19. (*Id.*)

During this time, Jackson says that he worked as a shower porter in his housing unit. (*Id.*) He worked the second shift, cleaning the Unit 11 showers from 11:30pm to 3:00am. (*Id.*, PageID.10.) Jackson says that CO Perkins hired him for the shower porter position. (*Id.*, PageID.9.) Upon hiring him, CO Perkins provided Jackson with gloves and bleach to carry out his duties. Jackson was later provided with a mask. (*Id.*)

According to Jackson, prisoners with COVID-19 in Unit 11 were instructed to shower between 11:30pm and 11:50pm, right at the start of Jackson's porter shift. (*Id.*, PageID.10.) Jackson claims that on April 10, 2020, CO Smutek instructed him to clean the showers immediately after inmates with COVID-19 left the shower area. (*Id.*)

On April 23, 2020, a few weeks after receiving CO Smutek's instructions,

3

Jackson says he discussed the shower cleaning protocols with fellow porter A. Moore. (*Id.*) Moore told Jackson that COs Perkins and Mitchell instructed him to wait one hour before cleaning the showers used by COVID-19 positive inmates. (*Id.*, PageID.10-11.) Perkins allegedly explained that the hour wait was part of the new COVID-19 protocol. (*Id.*, PageID.11.) Jackson says that Moore is a white inmate; Jackson is a black inmate. Due to the different instructions given to the two men, Jackson filed grievance NCF-20-04-0156-2F against the COs for failing to protect him from COVID-19 exposure and discriminating against him based on race. (*Id.*) Jackson did not test positive for COVID-19 until December 1, 2020. (ECF No. 1-11, PageID.46.)

### III. Summary Judgment

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986).

## IV.     Eighth Amendment

Jackson claims that COs Smutek, Perkins, and Mitchell acted with deliberate indifference to the serious risk of harm posed by the COVID-19 virus when they told him to clean the Unit 11 showers immediately after they were used by prisoners with COVID-19.  (ECF No. 1, PageID.12.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that

Defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37.

### a. Objective Component

To satisfy the objective component of a deliberate indifference claim, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. According to Jackson's verified complaint, there was a COVID-19 outbreak at his facility in March and April of 2020. (ECF No. 1, PageID.9-10.) During that outbreak, he was made to clean showers recently used by prisoners with COVID-19. (*Id.*, PageID.10.) Jackson further alleged that, at the time, he suffered from medical conditions including stomach inflammation and internal bleeding. (*Id.*, PageID.8.)

In *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020), medically vulnerable inmates at a federal corrections facility asserted that the Bureau of Prisons violated their Eighth Amendment rights by failing to protect them from COVID-19. The court found that the objective component was "easily satisfied," explaining that:

> The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death. The BOP acknowledges that "[t]he health risks posed by COVID-19 are significant." The infection and fatality rates at Elkton have borne out the serious risk of COVID-

> 19, despite the BOP's efforts. The transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing—which places inmates within feet of each other—and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners at Elkton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death.

*Id.* at 840 (citation omitted).

Jackson has not established that he is a medically vulnerable person, such that the objective component is "easily satisfied" by the risk of harm posed by the COVID-19 virus. Instead, Jackson alleged that he was suffering from stomach inflammation and internal bleeding and offered conclusory allegations that those conditions put him at a greater risk of harm if he contracted COVID-19. (ECF No. 1, PageID.11.) But even assuming that COVID-19 poses a sufficiently substantial risk of serious harm to prisoners who are not medically vulnerable, it is the undersigned's opinion that Defendants are entitled to summary judgment on the subjective component of Jackson's deliberate indifference claim.

### b. Subjective Component

Under the subjective component, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. This "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. In other words, deliberate indifference involves a state of mind "akin to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they

7

responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Here, Defendants concede that the relevant question is whether they responded reasonably to the risks posed by the COVID-19 virus. (ECF No. 85, PageID.632.)

As an initial matter, the undersigned notes that by Jackson's own account, Defendants took steps to protect him against COVID-19 while he carried out his duties as a porter. Jackson says that CO Perkins hired him for the porter position, and that Perkins gave him bleach and gloves. (ECF No. 1, PageID.9.) Later, Jackson says that he was given a mask. (*Id.*) But Jackson nevertheless maintains that Defendants were deliberately indifferent to a substantial risk of serious harm because they did not tell him to wait an hour before cleaning showers utilized by prisoners with COVID-19.

More specifically, Jackson alleges that COs Perkins and Mitchell told prisoner Moore, who also served as a porter at NCF, that he needed to wait an hour before cleaning showers used by prisoners with COVID-19. (*Id.*, PageID.10-11.) Jackson further claims that Perkins told Moore that the hour-long wait was part of new COVID-19 protocols that Perkins received in an email memorandum. (*Id.*, PageID.11-12.) Despite this interaction and supposed protocol, Jackson says that COs Perkins and Mitchell never told him to wait before cleaning the Unit 11 showers, and CO Smutek told him to clean the showers immediately after they were used by prisoners with COVID-19. (*Id.*, PageID.9-11.)

There are a few problems with Jackson's allegations. First, even assuming

8

that COs Perkins and Mitchell told another porter to wait an hour before cleaning showers,[2] the evidence in the record reflects that COs Perkins and Mitchell worked the 6:00 a.m. to 6:00 p.m. shift at NCF. (ECF No. 85-4, PageID.668; ECF No. 85-5, PageID.672.) Jackson worked as a porter from 11:30 p.m. to 3:00 a.m. (ECF No. 1, PageID.10). As such, COs Perkins and Mitchell did not regularly supervise Jackson's work or instruct him on how to carry out his duties. And while Jackson attests that he occasionally worked as a porter during COs Perkins and Mitchell's shifts (ECF No. 88, PageID.710), Jackson provides no evidence that the COs were aware that he was cleaning showers immediately after they were used by prisoners with COVID-19.[3]

Second, even assuming that CO Smutek told Jackson to clean the showers immediately after use by prisoners with COVID-19,[4] there is no evidence that CO Smutek was aware of the alleged wait-time protocol. Jackson alleges in his verified complaint that COs Perkins and Mitchell directed Moore to wait to clean the showers based on an email memorandum setting forth new COVID-19 protocols. (ECF No. 1,

---

[2] Of course, COs Perkins and Mitchell deny instructing any of the porters to wait an hour before cleaning showers. (ECF No. 85-4, PageID.669 (Perkins Aff.); ECF No. 85-5, PageID.673 (Mitchell Aff.).) But such a denial creates at most an issue of fact.
[3] During his deposition, Jackson attested that COs Perkins and Mitchell knew that he had not been informed of the wait-time protocol. (ECF No. 85-2, PageID.661.) But when asked how he knew, Jackson relied on circular logic rather than personal knowledge. Jackson attested that COs Perkins and Mitchell must have known that he had not been informed of the wait-time protocol because COs Perkins and Mitchell had not themselves informed Jackson of the protocol. (*Id.*) That is simply insufficient to create a genuine issue of fact.
[4] CO Smutek denies instructing Jackson to clean the Unit 11 showers immediately after they were used by prisoners with COVID-19. (ECF No. 85-3, PageID.666 (Smutek Aff.).) Once again, such a denial creates at most an issue of fact.

9

PageID.11-12.) But the allegation in Jackson's complaint is hearsay;[5] Jackson cannot rely on hearsay evidence to create a genuine issue of material fact. *See Weberg v. Franks*, 229 F.3d 514, 526 n.3 (6th Cir. 2000) (disregarding allegations made in a verified complaint on the grounds that they were based on hearsay rather than personal knowledge). And even assuming that COs Perkins and Mitchell received such an email, there is no evidence that CO Smutek received the same. In fact, during a January 18, 2023, deposition, Jackson stated numerous times that he was uncertain whether Smutek knew about the email. (ECF No. 85-2, PageID.657 ("So I guess, he didn't — he didn't know about the email."), 659 ("I said I don't know if he knew about it. I don't know if he knew about the email.").)

Ultimately, it is the undersigned's opinion that there are no genuine issues of material fact with respect to the subjective component of Jackson's deliberate indifference claim. Defendants' actions do not display a state of mind "akin to criminal recklessness." Instead, Defendants acted reasonably in providing Jackson with bleach, gloves, and a mask to carry out his duties as a porter. The undersigned

---

5    Federal Rule of Evidence 801(c) defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Jackson's complaint allegation is a statement made by prisoner Moore, offered to prove that CO Perkins received and relied on an email memorandum stating that prisoners should wait an hour before cleaning facility showers so as to mitigate their risk of contracting COVID-19.

    The undersigned acknowledges that in addition to his complaint, Jackson filed a verified statement from Moore. (ECF No. 1-1.) But that statement contained no mention of email memoranda or COVID-19 protocols. (ECF No. 1-1, PageID.32.) And Jackson admitted during his deposition testimony that he never saw the email himself. (ECF No. 85-2, PageID.652.)

therefore recommends that the Court grant Defendants summary judgment as to Jackson's Eighth Amendment deliberate indifference claim.

## V.     Fourteenth Amendment Equal Protection

In addition to asserting that Defendants acted with deliberate indifference when they told prisoner Moore to wait an hour to clean the showers, but did not tell Jackson the same, Jackson claims Defendants discriminated against him based on his race in violation of the Equal Protection Clause of the Fourteenth Amendment. (ECF No. 1, PageID.11.)  As evidence, Jackson states that he is a black prisoner; Moore is a white prisoner.  (*Id.*)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  A Section 1983 plaintiff making a claim under the Equal Protection Clause must show that a state actor "intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990).  As explained by the Supreme Court:

> "Discriminatory purpose," . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.

*Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (citation omitted)

While plaintiffs asserting equal protection claims must demonstrate

11

discriminatory intent, "discriminatory intent need not be proved by direct evidence." *Rogers v. Lodge*, 458 U.S. 613, 618 (1982). So, while it may be difficult to prove discriminatory intent without "the proverbial 'smoking gun of an overly discriminatory statement by a decisionmaker,'" it is not impossible. *Ryan v. City of Detroit*, 174 F. Supp. 3d 964 (E.D. Mich. 2016) (quoting *Soto v. Flores*, 103 F.3d 1056, 1067 (1st Cir.1997), *cert. denied*, 522 U.S. 819 (1997)), *aff'd sub nom. Ryan v. City of Detroit, MI*, 698 F. App'x 272 (6th Cir. 2017). "[D]etermining the existence of a discriminatory purpose 'demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available,'" *Rogers*, 458 U.S. at 618 (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)).

In the undersigned's opinion, Jackson's allegations do not show discriminatory intent. As an initial matter Jackson does not provide any direct evidence of racially discriminatory intent. To the contrary, Jackson denies that Defendants ever made discriminatory comments towards him. (ECF No. 85-2, PageID.652.) That portion of his deposition testimony is shown below:

```
21  Q    Okay.  In regards to this cleaning incident with the showers
22       and the three CO's being Smutek, Perkins and Mitchell, have
23       any of them ever said anything to you about acting a certain
24       way because you are African-American?
25  A    I would never lie on them.  No; no they have not.  I believe
```

(*Id.*) And when Jackson was asked whether he had "any reason to believe that Smutek didn't like [Jackson] because [Jackson is] African-American, or that [Smutek] doesn't like African-Americans," Jackson was unable to point to any reason beyond

Smutek's "attitude and energy."  (*Id.*, PageID.659.)

Moving then to circumstantial evidence of discriminatory intent, the most that Jackson can offer is the mere fact that he is black, and Moore is white, and they were given different directions as to how to perform their job duties.  But to the extent that Jackson's implies that the only difference between Jackson and Moore is their race (ECF No. 88, PageID.711), that implication is contradicted by the record.  Per Jackson's allegations, Moore and Jackson worked different shifts at NCF.[6]  Furthermore, Moore and Jackson received the cleaning instructions underlying this case from different staff: Jackson from Smutek and Moore from Mitchell and Perkins.  With these differences in mind, it is entirely possible that the porters were simply given different instructions because they spoke with different staff.  Indeed, Jackson avers that when he confronted Smutek about the instructions that Perkins and Mitchell provided Moore, Smutek stated: "What do they know? They don't clean the shower."  (ECF No. 85-2, PageID.658.)

Simply put, there are no genuine issues of material fact.  Jackson's only evidence of racial discrimination is that he is black, and Moore is white, and they received different instructions from different staff members as to how they should clean facility showers.  Under the circumstances presented, it is the undersigned's opinion that Jackson's allegations are insufficient to show discriminatory intent.  Accordingly, the undersigned recommends that the Court grant Defendants

---

[6] That was, after all, Jackson's basis for asserting that he was more at risk for contracting COVID-19 than Moore in his complaint.  (ECF No. 1, PageID.11.)

summary judgment as to Jackson's Fourteenth Amendment equal protection claim.

## VI. Qualified Immunity

Defendants conclude their motion for summary judgment by asserting they are entitled to qualified immunity. (ECF No. 85, PageID.640.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))). As explained by the Court in *Pearson v. Callahan*, a qualified immunity analysis involves two determinations: (1) "whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right," and (2) "whether the right at issue was "clearly established" at the time of defendant's alleged misconduct." 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court may make these determinations in either order. *Id.* at 236.

Defendants' argument for qualified immunity is largely redundant. After initially arguing that they are entitled to judgment because they did not violate Jackson's Eighth and Fourteenth Amendment rights, they argue that they are entitled to qualified immunity because they did not violate Jackson's Eighth and Fourteenth Amendment rights. In other words, Defendants do not contend that the rights at issue were not clearly established at the time of their alleged misconduct.

14

In any event, the undersigned agrees; because there are no genuine issues of material fact and the undersigned finds that Defendants did not violate Jackson's Eighth and Fourteenth Amendment rights, Defendants are entitled to qualified immunity.

## VII. Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment. (ECF No. 84.)  In the undersigned's opinion, there are no genuine issues of material fact.  Defendants have established that they acted reasonably in response to the risks posed by the COVID-19 pandemic.  Furthermore, even assuming that Defendants gave Jackson different cleaning instructions than they gave to a porter of a different race, nothing on the record suggests that Defendants acted with a discriminatory intent.  Instead, it appears that different COs gave different instructions to their subordinates, and that is not a constitutional violation.

If the Court accepts this recommendation, this case will be dismissed.

Dated:  October 25, 2023                                         /s/ *Maarten Vermaat*
                                                                                      MAARTEN VERMAAT
                                                                                      U.S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).